UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT TIPPEN,

       Plaintiff,                                              Hon. Robert J. Jonker

v.                                                                Case No. 1:13-CV-1377

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits and Supplemental Security Income benefits under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security

case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 50 years of age on his alleged disability onset date. (Tr. 147). He possesses an eighth grade education and previously worked as a forklift driver, carpenter, and factory laborer. (Tr. 69-70). Plaintiff applied for benefits on May 4, 2011, alleging that he had been disabled since November 1, 2009, due to degenerative disc disease and arthritis. (Tr. 147-58, 173). Plaintiff's applications were denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (Tr. 42-146). On August 29, 2012, Plaintiff appeared before ALJ David Pang with testimony being offered by Plaintiff and a vocational expert. (Tr. 19-37). In a written decision dated September 10, 2012, the ALJ determined that Plaintiff was not disabled. (Tr. 65-72). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (Tr. 4-9). Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## RELEVANT MEDICAL HISTORY

On July 21, 2006, Plaintiff participated in an MRI examination of his lumbosacral spine the results of which revealed "multilevel degenerative disc disease" and "a small left paracentral focal disc protrusion at the L3-L4 level," but "no spinal canal stenosis." (Tr. 237).

On August 11, 2011, Plaintiff was examined by Dr. Robert Jamieson. (Tr. 240-43). With respect to Plaintiff's subjective complaints, the doctor reported the following:

> The patient is a 51 year old male with a history of degenerative disk disease and arthritis of the right shoulder, right wrist and left hip.
>
> In regards to his degenerative disk disease, he states this is in his low back. He had a motor vehicle accident in 2006 and at that time x-rays

3

> and MRI showed degenerative disk disease. He states this is a constant pain and his back "locks up" on him. He states it is worse with walking and standing too long or with bending and twisting. He states it is better with stretching or with leaning forward. He did physical therapy which helped a little. He has not had injections or seen a surgeon for this. He states he uses a cane at all times even around the house for security and especially long distances. He states he can walk about 1 block and stand for 20 minutes.
>
> In regards to his arthritis of the left hip, he states he fractured it twice after falling off roofs while doing construction work. He states he has a deep achy pain that is constant. He states increased activity makes it worse. He states he also fractured his right wrist in one of his falls off a roof. He continues to have a deep throbbing achiness in the wrist. He states he fractured his right shoulder and underwent an open reduction with internal fixation but he continues to have decreased strength and decreased range of motion of the right shoulder.

(Tr. 240).

> A musculoskeletal examination revealed the following:
>
> There are no obvious bony deformities. Peripheral pulses are easily palpated and symmetrical. There is no edema. The patient has full range of motion of the right hip and right wrist but did have pain with ranges of motion. The patient did have paravertebral muscle spasms with positive tenderness to palpation of the thoracic and lumbar spine. The patient has limited range of motion of the lumbar spine and right shoulder as listed below; otherwise all other range of motion is intact and full. Straight leg raise was positive bilaterally. Romberg's test[1] is negative. There is no erythema or effusion of any joint. Grip strength is normal. The hands have full dexterity.

(Tr. 242).

> A neurological examination revealed the following:

---

[1] Romberg test is a neurological test designed to detect poor balance. *See* Romberg Test, available at http://www.mult-sclerosis.org/RombergTest.html (last visited on January 14, 2015). The patient stands with her feet together and eyes closed. The examiner will then push her slightly to determine whether she is able to compensate and regain her posture. *Id.*

>Motor and sensory function remains intact. Cranial nerves II through XII are grossly intact. The patient is awake, alert and oriented to person, place and time. The patient is otherwise distally and neurovascularly intact. Reflexes are present and symmetrical. No disorientation is noted.

(Tr. 243).

>Dr. Jamieson concluded as follows:
>
>1.  History of degenerative disk disease of the low back with patient having tenderness to palpation, positive paravertebral muscle spasms and limited range of motion as listed above. Straight leg raise was positive bilaterally. The patient walks with a limp on the left. He has had physical therapy in the past which only offered very little relief. The patient does use a cane with ambulation which appears necessary for long distances. He was able to perform the examination without his cane today.
>
>2.  History of arthritis of the right shoulder with the patient having a fracture and subsequent ORIF[2] and he continues to have pain. He does have limited range of motion of the right shoulder but has full grip strength.
>
>3.  History of left hip arthritis with the patient fracturing it twice after fall off roofs. The patient does have full range of motion but does have pain with extremes of range of motion.
>
>4.  History of right wrist fracture from falling off a roof with the patient having continued pain. He has full range of motion and full grip strength but does have pain with extremes of range of motion.

(Tr. 243).

On August 2, 2012, Dr. Alfonso Llanto completed a questionnaire regarding Plaintiff's physical residual functional capacity. (Tr. 271-74). The doctor reported that Plaintiff can

---

[2] ORIF is an abbreviation for Open Reduction and Internal Fixation, a type of surgery used to repair broken bones. *See Open Reduction and Internal Fixation Surgery*, available at http://www.bidmc.org/YourHealth/Medical-Procedures.aspx?ChunkID=539804 (last visited on February 3, 2015).

walk one block "without rest or severe pain." (Tr. 272). The doctor reported that Plaintiff can continuously sit for 15 minutes and continuously stand for 15 minutes. (Tr. 272). The doctor reported that during an 8-hour workday with normal breaks, Plaintiff can stand/walk for "less than 2 hours" and can sit for "about 2 hours." (Tr. 273). Dr. Llanto noted that Plaintiff required a job with a sit/stand option. (Tr. 273). The doctor reported that Plaintiff can occasionally lift 10 pounds but can never lift 20 pounds. (Tr. 273). The doctor also reported that Plaintiff's ability to perform certain postural maneuvers as well as use his upper extremities to perform grasping, reaching, and fingering activities was significantly diminished. (Tr. 273-74).

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[3] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional

---

[3] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffers from: (1) multilevel degenerative disc disease; (2) arthritis of the right wrist, right shoulder, and left hip; and (3) high blood pressure, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 67-68). The ALJ next determined that Plaintiff retained the capacity to perform light work[4] subject to the following limitations: (1) he requires a cane for prolonged ambulation and uneven terrain; (2) he can only occasionally stoop, kneel, crouch,

---

[4] Light work involves lifting "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567. Furthermore, work is considered "light" when it involves "a good deal of walking or standing," defined as "approximately 6 hours of an 8-hour workday." 20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).

crawl, and climb ramps, stairs, ladders, and scaffolds; (3) he can never work around unprotected heights; (4) he can only occasionally use his right upper extremity to perform handling activities or use hand controls; and (5) he is limited to simple work. (Tr. 68).

The ALJ found that Plaintiff cannot perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ submitted interrogatories to a vocational expert.

The vocational expert testified that there existed in the regional economy approximately 8,020 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 34-36). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *Martin v. Commissioner of Social Security*, 170 Fed. Appx. 369, 374 (6th Cir., Mar. 1, 2006). The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

I.        **The ALJ Properly Assessed the Medical Evidence**

As noted above, Dr. Llanto expressed the opinion that Plaintiff's ability to perform work activities was more limited than recognized by the ALJ. The ALJ accorded "good weight" to certain portions of Dr. Llanto's report while affording "little weight" to other portions thereof. Plaintiff argues that because Dr. Llanto was his treating physician, the ALJ was required to afford controlling weight to his opinions.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007).

With respect to the opinions expressed in Dr. Llanto's August 2, 2012 report, the ALJ concluded as follows:

> The portion of Dr. Llanto's opinion which endorses postural and right side manipulative limitations is given good weight and has been incorporated into the above RFC because it is consistent with the weight of the medical record and the claimant's credible testimony. The remainder of Dr. Llanto's opinion is overly restrictive because it is not substantiated by Dr. Llanto's own treatment and is given little weight.

(Tr. 70).

While the ALJ agreed with Dr. Llanto that Plaintiff's ability to perform certain postural maneuvers and use his right upper extremity was limited, the ALJ rejected the doctor's opinion regarding Plaintiff's ability to sit, stand, walk, and lift. The limitations articulated by Dr. Llanto in this regard are inconsistent with the objective medical evidence and the examination conducted by Dr. Jamieson as the discussion above reveals. Dr. Llanto's opinions in this regard are likewise inconsistent with his own treatment notes. (Tr. 249-67). In sum, the ALJ's decision to discount certain portions of Dr. Llanto's report is supported by substantial evidence.

**II.        The ALJ's RFC Determination is Supported by Substantial Evidence**

A claimant's RFC represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996). Plaintiff argues that he is entitled to relief because the ALJ "failed to create an accurate Residual Functional Capacity Assessment that encompassed all of Plaintiff's limitations." In this respect, Plaintiff further argues that his "physical impairments preclude him from working." The Court is not persuaded.

As discussed in the previous section, the scant evidence of record in this matter does not suggest that Plaintiff is limited to an extent greater than that recognized by the ALJ. An MRI of Plaintiff's lumbosacral spine revealed "multilevel degenerative disc disease" and "a small left paracentral focal disc protrusion at the L3-L4 level," but "no spinal canal stenosis." This result supports the conclusion that Plaintiff's ability to work is limited, as reflect in the ALJ's RFC determination, but certainly not precluded. The results of Dr. Jamieson's examination support the same conclusion. Dr. Llanto's contemporaneous treatment notes are likewise not inconsistent with the ALJ's RFC determination.

The Court recognizes the potential severity of Plaintiff's shoulder impairment. Specifically, Plaintiff has reported that he "fractured his right shoulder and underwent an open reduction with internal fixation," but that he nevertheless "continues to have decreased strength and decreased range of motion in the right shoulder." (Tr. 240). While such suggests a level of impairment perhaps inconsistent with the ALJ's RFC, the significance of Plaintiff's assertion must be considered in light of the evidence of record. There is nothing in the scant medical record which substantiates that Plaintiff's shoulder injury was as severe as Plaintiff alleges. More importantly, the medical evidence cited by the ALJ supports the conclusion that while Plaintiff experiences limited range of motion in his right shoulder his strength or ability to function is not impaired to an extent beyond that accounted for by his RFC. Accordingly, this argument is rejected.

**III.      The ALJ Properly Relied on the Testimony of a Vocational Expert**

Finally, Plaintiff argues that the ALJ's finding at Step V of the sequential evaluation process is "unsupported by the substantial weight of the evidence." While the ALJ may satisfy his

burden through the use of hypothetical questions posed to a vocational expert, such questions must accurately portray Plaintiff's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996). The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's RFC, to which the vocational expert indicated that there existed approximately 8,020 jobs in the regional economy. The ALJ's RFC determination is supported by substantial evidence and there was nothing improper or incomplete about the hypothetical questions the ALJ posed to the vocational expert. The Court concludes, therefore, that the ALJ properly relied upon the vocational expert's testimony.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within such time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: March 3, 2015                                  /s/ Ellen S. Carmody
                                                     ELLEN S. CARMODY
                                                     United States Magistrate Judge